JOHN CURTIN ET AL. V. MARIA ATKINSON.

FILED JANUARY 17, 1893.   No. 3731.

1. **Liquors:** DEALER'S BOND: CONSTRUCTION: LIABILITY OF
SURETIES.   An undertaking will be strictly construed in favor
of sureties and their liability will not be extended by construc-
tion beyond their specific agreement.

2. ——— : ——— : ———.   The term traffic in intoxicating drinks,
as used in section 15, chap. 50, Comp. Stats., will, in action on a
license bond, be held to mean the sale or furnishing of liquors to
third persons, and not the use thereof by the saloon-keeper.

3. ——— : ———  INJURIES BY SALOON-KEEPER WHILE INTOX-
ICATED: LIABILITY OF SURETIES FOR DAMAGES.  S., a saloon-
keeper, while intoxicated in his own saloon, shot and killed the
plaintiff's husband.  *Held*, That the drinking of the liquor by S.
was not the traffic in intoxicating liquor within the meaning of
the law, or such as will render his sureties liable in an action
upon his bond.

4. **Error Proceedings:** PARTIES IN SUPREME COURT.  The sec-
ond point of the syllabus in this case in 29 Neb., 612, over-
ruled.

REHEARING of case reported in 29 Neb., 612.

*P. O. Cassidy, E. M. Wolfe, B. S. Baker*, and *W. P.
Freeman*, for plaintiffs in error.

*John Saxon* and *Hambel & Heasty*, contra.

POST, J.

On a former hearing of this case it was held that the
court did not acquire jurisdiction to review the judgment
below, for the reason that the defendants therein were not
all made parties to the proceeding in error. (See *Curtin v.
Atkinson*, 29 Neb., 612.)   By reference to the record in the
case, we observe that the petition in error was filed in this
court on the 28th day of June, 1889.   On the 30th day of

August, following, the plaintiffs in error's brief was served upon the attorney for the defendant in error.   On the 16th day of September, 1889, defendant in error filed herein a paper entitled "An answer to the petition in error."   On the 31st day of October, 1889, defendant in error filed a brief upon the merits of the case, and on the same day it was argued and submitted upon its merits.   If the answer to the petition in error presents an issue of law it was never called to the attention of the court otherwise than by the submission of the case upon its merits.   It is also claimed by counsel, and undisputed by the record, that they had no notice whatever of the answer aforesaid previous to the filing of the opinion herein, at the January, 1890, term. It may be conceded here that had objection been made at the proper time, on the ground that the parties to the judgment had not all been joined as plaintiffs or defendants in error, such omission would have been held fatal to the prosecution of the petition in error.   A rehearing was subsequently allowed upon motion of plaintiffs in error. Since, then, the identical question has been carefully considered in the case of *Consaul v. Sheldon*, 35 Neb., 247, and the conclusion reached that where parties to a proceeding in error submit the controversy upon its merits, they will be held to have waived the objection that there is a defect of parties.   We regard that case as decisive of the question now under consideration.   There is, however, a more substantial objection to the proposition for which the defendant in error contends.   A careful examination of the so-called answer satisfies us that it was not intended as an objection to the proceeding, on the ground of a defect of parties, but rather upon the ground that the plaintiffs in error, sureties upon the bond, were concluded by the judgment against their principal.   We copy the pleading at length, as follows:

. "And now comes the defendant in error, and for answer to the petition in error of said plaintiffs says, that said

plaintiffs ought not to have their said action thereof against
her, because the said plaintiffs were the sureties upon the
license bond of one Patrick H. Shiel, and said Shiel is not
joined with said plaintiffs in prosecuting this petition in
error. Defendant further says that said bond was and is
an obligation on the part of said plaintiffs in error to be-
come responsible for the result of litigation against the
said Shiel, to-wit, an obligation to pay and become re-
sponsible for all damages adjudged against said Shiel
under the provisions of chapter 50, Statutes of Nebraska.
And defendant avers that said Shiel having, without fraud
or collusion with defendant, acquiesced in, and submitted
to, said judgment against him, plaintiffs have no standing
to maintain their said action and petition in error against
her, but that said judgment is conclusive against said
plaintiffs, and they ought not be heard to question said
judgment in any manner or form whatever.

"This defendant, for further answer and defense, avers
that the several matters and things specified in plaintiffs'
petition in error do not constitute error to the prejudice of
the said plaintiffs, or their legal rights as sureties upon
said bond after judgment thereon against their principal,
said Patrick H. Shiel. Wherefore defendant prays that
said judgment may be affirmed and that she may have and
recover her costs herein expended."

Had the pleader omitted all after the first sentence, it is
possible that the pleadings might have been construed as
an objection in the nature of a demurrer on the ground of
a defect of parties. But construing all the several parts
thereof together, it is obvious that the objection is not on
account of the omission of Shiel as a party, but rather to
the right of plaintiffs in error to maintain the action. In
other words, it involves the merits of the controversy in-
stead of the question of parties. Had defendant in error
sought to avail herself of the failure to make Shiel a party
to the petition in error, she should have called the attention

of the court to the omission before submission of the case on its merits.

2. We come now to a consideration of the controversy upon its merits. Several propositions are discussed by counsel, but they are mainly subsidiary to the one controlling question, viz.: Does the petition below state a cause of action against the plaintiffs in error? It is in substance alleged therein that Shiel was a licensed saloon-keeper and had given bond as required by law with plaintiffs in error as sureties. That during the time for which he was licensed to sell liquors said Shiel drank liquor to excess and finally, during a fit of intoxication in his saloon, shot and killed the plaintiff's husband. By reference to section 6, chapter 50, Comp. Stats., it will be observed that every licensed saloon-keeper is required to give a bond with at least two sufficient sureties, conditioned that he will not violate any of the provisions of the act, and will pay all damages, fines, penalties, and forfeitures which may be adjudged against him under the provisions of the act, and that said bond may be sued on for the use of any person who may be injured by the selling or giving away of intoxicating liquor by the person licensed.

By section 15 it is provided that "the person so licensed shall pay all damages that the community or individuals may sustain in consequence of such traffic, he shall support all paupers, widows, and orphans, and the expense of all civil and criminal prosecutions growing out of or justly attributable to his traffic in intoxicating drinks, said damage to be recovered in any court of competent jurisdiction in an action on the bond required in section 6 of the act," etc.

By section 16 it is provided as follows: "It shall be lawful for any married woman, or any other person at her request, to institute and maintain in her own name a suit on any such bond for all damages sustained by herself and children on account of such traffic, and the money when collected shall be paid over for the use of herself and children.

By section 17 it is provided, in substance, that when any one has become a public charge by reason of the selling or giving to him of intoxicating liquors, the city or county interested may recover in an action on the bond of the saloon-keeper guilty of selling or giving liquor to such person. By section 18 it is provided as follows:

"On the trial of any suit under the provisions hereof, the cause or foundation of which shall be the acts done or injuries inflicted by a person under the influence of liquor, it shall only be necessary to sustain the action to prove that the defendant or defendants sold or gave liquor to the person so intoxicated, or under the influence of liquor, whose acts or injuries are complained of, on that day or about that time when said acts were committed or said injuries received; and in an action for damages brought by a married woman, or other person whose support legally devolves upon a person disqualified by intemperance from earning the same, it shall only be necessary to prove that the defendant has given or sold intoxicating drinks to such person during the period of such disqualification."

The contention of the defendant in error is that the term traffic as used in sections 15 and 16 should be construed to mean calling, occupation, or employment, and that the injury for which she sues is the result direct or remote of such occupation or employment. The policy of this court has been to give to the civil damage feature of our liquor law the most liberal construction possible in favor of innocent sufferers from the effect of the liquor traffic. For instance, in *McClay v. Worrall*, 18 Neb., 44, it was held that the injured party is not limited to such damages as are the natural and proximate result of the furnishing of the liquor, but that a woman may recover from a saloon-keeper for injuries inflicted upon her son by a third party in consequence of liquor furnished the latter. In *Wardell v. McConnell*, 23 Neb., 152 it was held that the

liability of the surety does not terminate with the bond, but where the principal furnishes liquor to one who is thereby disqualified to earn a support for his family, the liability of the surety continues throughout such period of disqualification. And in *Buckmaster v. McElroy*, 20 Neb., 557, it was held that one who had suffered injury in consequence of his own voluntary intoxication may recover on the bond of the saloon-keeper from whom the liquor was procured. We are not disposed to recede from the position taken in previous decisions, notwithstanding the last named case has been the subject of no little criticism, particularly by Mr. Black in his recent work on Intoxicating Liquors, 291. But to further extend the liability of the saloon-keeper would be a palpable misconstruction of the liquor law and an unmistakable encroachment upon the powers of the legislature. By a closer examination of section 15, which is relied upon as authority for the action, we notice that the saloon-keeper is required to pay all damages that the community or individuals may suffer in consequence of *such* traffic, evidently referring to the selling or giving away of liquors as provided in the preceding sections. The word "traffic" is defined by Bouvier thus: "Commerce, trade, sale, or exchange; or merchandise, bills, money, and the like." Webster defines it thus: "Commerce, either by barter or by buying and selling; trade. This word, like *trade*, comprehends every species of dealing in the exchange or passing of goods or merchandise from hand to hand for an equivalent, unless the business of retailing may be excepted. It signifies appropriately foreign trade, but is not limited to that." We find the definition in the Century dictionary substantially the same as the last above. One of the most familiar rules of construction is that words are to be taken in their ordinary grammatical sense, unless such a construction would be obviously repugnant to the framers of the instrument, or would lead to some other inconvenience or absurdity. (Sedgwick on Const.

[2d ed.], 220.)   The above rule is especially applicable to actions against sureties whose liability will never be held to extend beyond the precise term of their contract. (*Ludlow v. Simond*, 2 Caines' Cases [N. Y.], 1 ; *Walsh v. Bailie*, 10 Johns. [N. Y.], 180 ; *Lanuse v. Barker*, Id., 312 ; *Pennoyer v. Watson*, 16 Id., 100 ; *Tunison v. Cramer*, 5 N. J. L., 499 ; *Gates v. McKee*, 13 N. Y., 232 ; *Ward v. Stahl*, 81 Id., 406 ; *National Mechanics' Banking Ass'n v. Conkling*, 90 Id., 116; *State v. Medary*, 17 O., 554.)

The argument of the defendant in error, that the word traffic should be construed to mean the calling or occupation of the saloon-keeper appears on first impression to be quite plausible; but a more careful examination of the question has convinced us that it is not sound.   The plaintiffs in error, by the conditions in their bond, undertook to answer for all damage which the community or individuals might suffer by reason of the traffic of their principal in intoxicating liquors.   They are presumed to have had in view all the damage incident to the sale or furnishing of liquor to third persons.   But they had a right to interpret and rely upon the language of the statute according to its ordinary and grammatical sense.   They did not undertake that Sheil would not drink liquor, and the use thereof by him was in no sense a breach of the conditions of the bond, and if they must respond in this case why should their liability be limited to acts done by their principal while intoxicated?   And why are they not liable for every assault and battery committed by him, at least upon the premises occupied as a saloon?   We have found no case directly in point, yet authorities are not wanting which sustain the position of the plaintiffs in error.   In *Lueken v. People*, 3 Ill. App., 375, which was an action upon a saloon-keeper's bond, the bartender of L., the saloon-keeper, sold liquor to B., whereby the latter became intoxicated and became engaged in an altercation with the bartender, who threw a glass tumbler at B., but missed him

and struck the plaintiff, a by-stander.    It was held that he could not recover.    The obligation which those plaintiffs assumed was to answer for damages incident to the traffic in intoxicating liquors by their principal, that is the selling or furnishing of liquor to others and not the use thereof himself.    It follows that the judgment against the plaintiffs in error is wrong and should be

REVERSED.

THE other judges concur.