BOHNEN INTERNATIONAL, INC., *et al.*, Plaintiffs-Appellees, *v.* LIBERTY MUTUAL INSURANCE COMPANY, INC., Defendant-Appellant.

Second District   No. 83—138

Opinion filed December 30, 1983.

Harry E. Sachrison and John S. Huntley, both of Sweeney and Riman, Ltd., of Chicago, for appellant.

Dallas C. Ingemunson, of Yorkville, and Peter K. Wilson, of Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiffs, Bohnen International, Inc., and John J. Bohnen, Jr., sought recovery for the loss of certain tractors from the defendant, Liberty Mutual Insurance Company, Inc., under an insurance policy issued by the defendant (Liberty). Summary judgment was entered for Bohnen International, and against the defendant, on the issue of liability. A jury trial was conducted on the issue of damages suffered

by Bohnen International as the result of the loss. A verdict in favor of Bohnen International in the amount of $36,500 was awarded. Liberty appeals.

Bohnen International was engaged in the business of selling and servicing new and used trucks in Oswego, Illinois. Pursuant to an agreement with Charles Odom and Joan Odom, the plaintiffs sold the Odoms three new tractors for a price of $106,900. As partial payment for the new trucks, the Odoms gave the plaintiffs three used tractors.

Two of the trade-in tractors, a 1973 International Harvester and a 1974 Ford, were subsequently seized by the FBI and the police on behalf of the true owners. The plaintiffs state that the two used tractors were stolen vehicles. The defendant Liberty claims that it was never proven the tractors were stolen. In its summary judgment order, the court stated the vehicles had been stolen.

The plaintiffs filed a complaint against the Odoms for breach of warranty of title to the two used tractors. A default judgment was entered against the Odoms for $33,988.59.

The plaintiffs sought recovery for the loss of the two vehicles from Liberty. The plaintiffs claimed the money was due them under the terms of an insurance policy issued by Liberty in consideration for premiums paid by the plaintiffs. The damage amount was based upon the trade allowance and the plaintiffs' investment in reconditioning the tractors.

The court granted the plaintiffs' motion for summary judgment and against Liberty on the issue of liability only. The judgment provided:

"f) In July 1976 plaintiff had, among others, three new motor vehicles covered by defendant's policy, which were sold to defendant Odom for $106,900.

g) The purchase price included three used motor vehicles received in trade and credited against the purchase price in the amount of $30,000.00 and which became motor vehicles covered by defendant's policy.

h) Plaintiff had not entrusted custody or possession of the new motor vehicles to any one prior to sale or consigned or franchized same, but rather made the sale direct to defendant Odom.

i) In fact the used motor vehicles had been stolen and by virtue thereof plaintiff lost permanent use and possession of both the new motor vehicles taken by defendant Odom and also the old motor vehicles returned to the rightful owners.

j) That such conduct constituted a theft.

k) That loss under the policy is limited to direct but may be subject to a further limitation in the case of loss and plaintiff claims additional expenses of $3,238.59 for restoration of the vehicles."

The judgment went on to find that questions of fact remained as to John J. Bohnen's agency and the amount of damages. Summary judgment for John J. Bohnen was denied.

The court denied Liberty's motion to vacate this judgment and enter summary judgment in its favor. The same judgment allowed the plaintiff to nonsuit John J. Bohnen, to amend the amount of damages to $31,238.59 and to amend the month of loss from August to October 1976, and to withdraw a jury demand. A fifth amended complaint reflecting the amendments was filed.

A trial on the issue of damages resulted in a verdict in the amount of $36,500.

Liberty's motion for judgment *n.o.v.* and for entry of judgment not to exceed $31,724 was denied.

Liberty filed a post-trial motion which sought to vacate the prior judgment and for judgment in its favor because the loss was not covered by the automobile physical damage insurance endorsement. The motion was denied.

On appeal, Liberty does not contest the fact that the plaintiff (Bohnen) was the named insured on a policy of insurance issued by Liberty. The policy period ran from November 1, 1975, to November 1, 1976, covering the time of loss. Nor does Liberty dispute the fact that the three new tractors sold to the Odoms and the three used tractors received by the plaintiff were "covered automobiles" under the endorsement to the insurance policy. Liberty claims that the endorsement, entitled automobile physical damage insurance endorsement, either did not cover or specifically excluded the loss suffered by the plaintiff.

Pertinent portions of the endorsement are:

"1. Coverage Agreements

1. The company will pay for loss to covered automobiles under Theft Coverage — caused by theft or larceny,

\* \* \*

Exclusions

This insurance does not apply:

\* \* \*

(e) to loss occurring

    (iii) after, or resulting from, the named insured's voluntarily parting with title to or possession of any covered automobile,

if induced to do so by any fraudulent scheme, trick, device or false pretense, or from embezzlement, conversion, secretion, theft or larceny committed by any person entrusted by the named insured with custody or possession of the covered automobile;

\* \* \*

IV. Additional Definitions

'loss' means direct and accidental loss or damage; \* \* \*.''

The first issue presented for review is whether the trial court erred in granting summary judgment for the plaintiff on the issue of the defendant's liability under the endorsement. The defendant views that issue in two parts. First, it claims that any loss to the plaintiff resulted from the plaintiff's voluntary parting with the three new tractors to the Odoms upon their misrepresentation they had good title to the used tractors. Although the three new vehicles were "covered automobiles," paragraph (e)(iii) of the endorsement excluded any loss from the sale to the Odoms. Second, theft coverage under the endorsement did not cover the loss of the two used vehicles because seizure by the FBI was not a theft.

The plaintiff points out that the loss it claims is not the three new tractors delivered to the Odoms but the two used tractors seized by the FBI. It further claims that the theft giving rise to the defendant's liability is not the seizure of the used tractors by the FBI. The theft which caused the plaintiff's loss was the original theft by the Odoms of the 1973 International Harvester and the 1974 Ford. The original theft caused the seizure which resulted in the plaintiff's loss. The plaintiff claims that the policy does not require the loss to be "directly" caused by the theft. Direct modifies loss.

Since the trial court's summary judgment order does not single out what actions constituted the theft, all three arguments of the parties are reviewed.

██ Summary judgment is properly granted only where no triable, genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. (*Blaylock v. Country Mutual Insurance Co.* (1980), 85 Ill. App. 3d 1042.) The facts of this case are not in dispute. The construction of language in an insurance policy and its effect are questions of law. (*Illinois Casualty Co. v. Peters* (1979), 73 Ill. App. 3d 33.) The extent of coverage based on the construction of the endorsement's language herein was a question of law properly decided on a motion for summary judgment. (*John Bader Lumber Co. v. Employers Insurance* (1982), 110 Ill. App. 3d 247.) However, as a question of law, the question of insurance coverage can be determined

upon review, independent of the trial court's judgment. *Illinois Casualty Co. v. Peters* (1979), 73 Ill. App. 3d 33.

In its first argument, Liberty contends that the loss suffered by the plaintiff is the loss of the three new vehicles taken by the Odoms. The loss was specifically excluded by the exclusionary provision of (e)(iii) of the insurance endorsement. Liberty claims that the plaintiff voluntarily parted with the three new vehicles and cannot recover for the loss resulting from the transaction.

The plaintiff points out that it sought recovery for the loss of two used vehicles seized by the FBI. It argues that that loss is not excluded by the provision (e)(iii) and therefore Liberty's argument is irrelevant on that point.

The plaintiff did not seek recovery on the loss of the three new vehicles. As both sides would acknowledge, the three new tractors were "covered automobiles" under the policy. However, their loss in this factual situation was specifically excluded by the terms of the endorsement.

Provision (e)(iii) is very similar to an exclusionary clause before the court in *Baxter Motors, Inc. v. Iowa Hardware Mutual Insurance Co.* (1958), 15 Ill. App. 2d 524. In *Baxter*, the plaintiff allowed a man to take a car for the weekend pursuant to an agreement that the man would return on Monday to pay for it. The plaintiff and the man had earlier entered into an agreement whereby the plaintiff would sell the car to the man for a certain sum of money. The car and the man were never found. The plaintiff sought recovery for the loss of the car under an insurance policy from the defendant.

Although the trial court found for the plaintiff, the appellate court reversed on the grounds that an exclusionary clause prevented recovery. The provision excluded coverage for loss where the insured voluntarily parted with title and possession due to a fraudulent scheme, trick, device, or false pretense; or loss from embezzlement, conversion, secretion, theft, larceny, robbery or pilferage by a person entrusted with either custody or possession. (*Baxter Motors, Inc. v. Iowa Hardware Mutual Insurance Co.* (1958), 15 Ill. App. 2d 524, 526.) While the loss was not excluded under the first part because the plaintiff did not part with title, it was excluded under the second portion. The man had acquired possession by false pretense resulting in a loss by theft, larceny or conversion. 15 Ill. App. 2d 524, 529-30; *cf. Phaholyothin v. State Farm Mutual Automobile Insurance Co.* (1982), 104 Ill. App. 3d 322, wherein *Baxter* was distinguished on the basis of the exclusionary clause therein.

In the case at bar, the provision excluded coverage where the

plaintiff voluntarily parted with title or possession due to a fraudulent scheme, trick, device or false pretense. Whether title was relinquished by the plaintiff is not necessary where the plaintiff voluntarily parted with possession of the three new vehicles upon the false pretense that the Odoms had clear title to the two used tractors tendered as consideration.

The loss was also excluded under the second portion of (e)(iii). The Odoms were entrusted with possession of the three new tractors. Their actions in obtaining that possession amounted to theft or larceny which excluded coverage under the endorsement provision.

Viewing the loss to the plaintiff as the two used vehicles seized by the FBI, there are two separate arguments by the parties. Liberty argues that the coverage portion of the insurance endorsement provides for loss to "covered automobiles" "caused by theft or larceny." While the FBI seized "covered automobiles," the seizure was not a theft because the FBI took the tractors on behalf of someone with a superior title.

The plaintiff had an insurable interest in the two used tractors seized by the FBI. (*Reznick v. Home Insurance Co.* (1977), 45 Ill. App. 3d 1058.) They were "covered automobiles" under the insurance endorsement. However, unlike *Reznick*, the plaintiff did not have comprehensive coverage of loss. In *Reznick*, the court found that the comprehensive provisions of the policy covered the loss to the plaintiff when his car was confiscated by the authorities as a stolen vehicle. See also *Blaylock v. Country Mutual Insurance Co.* (1980), 85 Ill. App. 3d 1042.

The plaintiff's only possible means of recovery for the loss suffered herein stems from the coverage for theft or larceny. Theft is not defined in the policy, and therefore an application of the Criminal Code of 1961 definition of theft (Ill. Rev. Stat. 1975, ch. 38, par. 16–1) is reasonable. *Kelly v. State Farm Mutual Automobile Insurance Co.* (1975), 34 Ill. App. 3d 290.

Under the definition found in section 16–1, the seizure by the FBI was not a theft. The FBI took the two used vehicles on behalf of someone with a superior title to the plaintiff's. The taking was not obtained by "unauthorized control," "deception," or "threat" on the part of the FBI. Ill. Rev. Stat. 1975, ch. 38, pars. 16–1(a), (b), (c), respectively.

Case law in other jurisdictions supports a view that the FBI seizure was not a theft. In *Hubbell v. Farmers Insurance Group* (1978), 200 Neb. 472, 263 N.W.2d 863, the court found that repossession of an automobile by a person with superior title was not a criminal tak-

ing. The automobile theft provision did not extend coverage over lawful repossession.

In *Jackson v. Teachers Insurance Co.* (1973), 30 Cal. App. 3d 341, 106 Cal. Rptr. 208, the court found that theft coverage in an insurance policy did not cover the taking of a stolen vehicle by police as agents for the rightful owner. Such action by the police was not a "theft" within the meaning of the policy.

■ Based on the foregoing, the FBI seizure of the two used vehicles was not a theft within the terms of the insurance endorsement. The loss was not covered.

Turning to the plaintiff's argument for coverage under the theft provision, it contends the loss it suffered was the two used tractors seized by the FBI. This loss was not caused by the FBI seizure. The loss to the plaintiff was caused by the original theft of the two used vehicles by the Odoms. The theft resulted in a seizure of the vehicles which in turn resulted in a loss "by theft" to the plaintiff. The plaintiff argues that the endorsement does not require the loss to be directly caused by theft.

Liberty points out that the plaintiff never established that the Odoms stole the two used vehicles. It also claims that it never conceded that the two tractors were stolen but only conceded that someone had a superior right to their possession over the plaintiff's.

Throughout the pleadings, arguments, and depositions presented on the plaintiff's behalf, it was consistently stated that the two vehicles were originally stolen from their true owner and seized by the authorities as stolen vehicles. The trial court, in granting summary judgment for the plaintiff, stated that the vehicles were stolen. Summary judgment can be granted only where no triable, genuine issues of material fact remain. (*Blaylock v. Country Mutual Insurance Co.* (1980), 85 Ill. App. 3d 1042.) Whether the vehicles were initially stolen is a material fact in the plaintiff's argument. However, Liberty did not question this allegation of fact and refers to the vehicles as stolen in its response in opposition to the plaintiff's motion for summary judgment. For purposes of review, the trial court's finding that the two used tractors were stolen vehicles will be applied.

We have found no other Illinois cases concerning the specific issue raised by the plaintiff under these facts. As previously noted, *Reznick v. Home Insurance Co.* (1977), 45 Ill. App. 3d 1058, allowed the plaintiff to recover for a loss under a comprehensive coverage policy when the police confiscated his car as a stolen vehicle. The plaintiff therein conceded that the situation was not one of theft. 45 Ill. App. 3d 1058, 1062.

The coverage provision in this case provides that Liberty will pay "for loss to covered automobiles under theft coverage—caused by theft or larceny." Insurance contracts must be read and construed as a whole and if there is an ambiguity, the contract must be construed in favor of granting coverage to the insured. (*National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54.) The entire clause must be considered in evaluating its meaning. (*Phaholyothin v. State Farm Mutual Automobile Insurance Co.* (1982), 104 Ill. App. 3d 322.) Liberal construction of an insurance policy in favor of the insured must yield to rules of reasonable construction. *Jenkins v. State Security Insurance Co.* (1978), 56 Ill. App. 3d 737.

A reading of the entire provision indicates that direct loss to "covered automobiles" from theft is covered by the endorsement. The theft must occur to a "covered automobile." Accepting the plaintiff's argument that the Odoms did steal the two used vehicles, that theft was not of "covered automobiles" within the terms of the policy. The theft occurred at a time when the vehicles were not insured. Liberty cannot be held liable for a theft occurring before the vehicles were insured.

Case law in other jurisdictions supports this position. In *Modern Sounds & Systems, Inc. v. Federated Mutual Insurance Co.* (1978), 200 Neb. 46, 262 N.W.2d 183, the court interpreted the undefined word "theft" in an insurance policy broadly. Theft included a loss caused by any unlawful or wrongful taking of the *insured* vehicle. (200 Neb. 46, 52, 262 N.W.2d 183, 187.) Theft insurance furnished protection only against losses arising from criminal takings of *insured* vehicles. (200 Neb. 46, 52, 262 N.W.2d 183, 187.) *Modern Sounds* was not concerned with the issue presented by the instant plaintiff and found that an insurance exclusion did not exclude the loss in that case.

The plaintiff in *Jackson v. Teachers Insurance Co.* (1973), 30 Cal. App. 3d 341, 106 Cal. Rptr. 208, claimed that the loss she sustained by purchasing a stolen vehicle, which ultimately led to the taking of the vehicle by the Los Angeles police department, was a "theft" within the meaning of her insurance policy. The reviewing court stated that the plaintiff's actual loss was the funds she paid for the stolen vehicle and that the purchase of the car was not a theft within the meaning of the policy. 30 Cal. App. 3d 341, 345, 106 Cal. Rptr. 208, 211.

In *O.M. Gaudy, Inc. v. North Carolina Home Insurance Co.* (1927), 145 Wash. 375, 260 P. 257, the court was faced with the issue

whether there could be recovery if the theft of the car took place prior to the issuance of the insurance policy. The plaintiff had sold the car to a man who misrepresented himself to be William Kyle. The man was really J. H. Baker. After Baker left with the car, the plaintiff obtained a rider to an insurance policy which would have covered the larceny committed by Baker. However, the court found that the rider did not provide coverage of the plaintiff's loss because the automobile had been stolen by Baker prior to the rider taking effect. The subject matter intended to be covered was not in existence at the time the policy became effective, an essential in an insurance contract. 145 Wash. 375, 378, 260 P. 257, 258.

In the instant case, the two used vehicles were not covered by the insurance endorsement at the time of their initial theft. The plaintiff cannot recover for a loss caused by theft when the theft occurred outside the policy provisions. To allow such a result would mean that the plaintiff could recover for a loss to its vehicles, such as loss caused by fire, lightning, windstorm, flood, vandalism, etc., which occurred prior to the plaintiff insuring the vehicles under the endorsement. Without a specific provision that the policy would cover pre-existing loss or damage, no coverage can be found.

Therefore, summary judgment on the issue of liability was improperly awarded to the plaintiff. As a matter of law, the insurance endorsement in issue did not provide coverage for the loss suffered by the plaintiff. The theft provision did not extend to vehicles which were not "covered automobiles" at the time of the theft.

Having found that liability did not exist under the endorsement, the judgment awarding damages based on liability is reversed. The other issues raised by Liberty concerning jury instructions, and the amount of damages need not be reviewed in light of our determination that there is no liability.

The judgments of the circuit court of Kendall County are reversed.

Reversed.

HOPF and NASH, JJ., concur.