LAY, Circuit Judge,
dissenting.
I respectfully dissent.
Under the circumstances, I respectfully submit that the result reached by the majority constitutes a gross miscarriage of justice for the families of those passengers who were killed and for the decedent owner and operator of the small plane involved. Under the doctrine of reasonable expectation, it is absurd to think that the owner of the plane did not contemplate full insurance coverage for his non-commercial flights.[13] The owner lost money on the flights in question each time he flew and the facts stipulated clearly show that he did not have a commercial purpose in having passengers share in a token expense for the flight.
The majority has now construed the insurance policy in such a wooden way as to find forfeiture of a non-commercial policy of insurance which the owner purchased to cover his injury or death and that of his passengers. This unreasonable interpretation defies every principle of construction governing insurance policies long given adherence by the Nebraska Supreme Court.
First of all, it is well-settled under Nebraska law that exclusionary clauses will be liberally construed in favor of the insured. Modern Sounds & Systems, Inc. v. Federated Mutual Ins. Co., 200 Neb. 46, 262 N.W.2d 183, 187 (1978). Second, it is clear under Nebraska law that forfeitures are not favored. See Rathbun v. Globe Indem. Co., 107 Neb. 18, 184 N.W. 903, 904-05 (1921). For over a century, Nebraska law has recognized that forfeitures which are against equity and good conscience or are absurd from the standpoint of the contract to give protection will not be enforced. See Connecticut Fire Ins. Co. v. Jeary, 60 Neb. 338, 83 N.W. 78, 79 (1900). Couch has expressed this holding by stating “that in cases where it is doubt *827 ful that a forfeiture provision was intended, the interpretation will be against a forfeiture.” Couch on Insurance 3d § 22:35 (1995) (citing Hilmer v. Western Travelers’ Accident Ass’n., 86 Neb. 285, 125 N.W. 535 (1910)). Couch farther states “[s]ince forfeitures are not favored, the courts are usually inclined to take hold of any extrinsic circumstance which indicates an election to waive a forfeiture or which precludes the insurer under principles of estoppel from enforcing the forfeiture.” Id. at § 22:36. Third, contrary to the law in Nebraska and all other jurisdictions, the majority here ignores the fundamental principle that an ambiguous insurance policy is to be construed against the insurer. See American Family Ins. Group v. Hemenway, 254 Neb. 134, 575 N.W.2d 143, 148 (1998); Safeco Ins. Co. of Am. v. Husker Aviation, Inc., 211 Neb. 21, 317 N.W.2d 745, 748 (1982). The majority avoids this principle by use of an indefensible construction, ignoring an obvious ambiguity in the insurance policy.
The premise underlying the majority’s analysis is that the commercial purpose clause is not ambiguous because it is expressly defined within the policy. In all due respect, the majority’s opinion fits the old adage “saying so don’t make it so.” A Dictionary of American Proverbs 526 (Wolfgang Mieder et al. eds., 1992). The majority’s declaration that the policy terms are not ambiguous does not cure the latent ambiguity in those terms, which arises when applied to the facts of this case.
The policy at issue excludes coverage when the insured aircraft is used for a “commercial purpose.” Commercial purpose is defined as any use of the aircraft for which an insured person “receives, or intends to receive, money or other benefits.” According to the policy, this exclusion does not operate where the aircraft’s occupants equally share the operating expenses of the flight. The obvious interpretation of “commercial” purpose relates to the owner making a profit from the flight. It is stipulated by the parties that no profit was made here.
To predict whether the Nebraska Supreme Court would find the commercial purpose clause ambiguous, the majority looks to other jurisdictions that have examined “for charge” exclusions. However, the reasoning the majority employs to reach its desired result is tenuous, at best.[14] The majority cites cases that hold where money paid by passengers exceeds operating costs, a “for charge” exclusion clause applies and precludes coverage. It also cites cases that hold where money paid by passengers equals expenses, a “for charge” exclusion does not apply and coverage is proper. Based on these authorities, the majority concludes that the commercial purpose clause is not ambiguous and must be enforced according to the plain meaning of its terms. However, none of the cases cited by the majority incorporate the facts of this case, where *828 the passengers paid less than the operating expenses of the flight. Herein lies the latent ambiguity which the majority overlooks. See Plambeck v. Union Pacific R.R. Co., 244 Neb. 780, 509 N.W.2d 17, 20 (1993) (“Although the language of a document may be clear and unambiguous, a latent ambiguity exists when collateral facts make the meaning of the contract uncertain.”); Couch on Insurance Sd § 21.12 (“A latent ambiguity exists where uncertainty appears in the application of the contract to the object thereof, although the policy read by itself would otherwise be clear.”).
The majority also reasons that any ambiguity in the commercial purpose clause is cured when it is read together with the equal sharing provision. The equal sharing provision defines what is not a commercial purpose. In other words, the majority defines a positive (commercial purpose) with a negative (not equal sharing). That syllogism does not preclude the possibility that the commercial purpose clause is ambiguous.
Obviously there can be more than one meaning given to “commercial purpose.” Under the terms of the policy, although the commercial purpose exclusionary clause is inoperable where there exists equal sharing of operating expenses, it makes no sense to argue that where there is less than equal sharing in expenses by the occupants, this constitutes a commercial purpose simply because it is not specifically expressed in the policy. If sharing of expenses makes the exclusion inoperable, the only reasonable construction is that anything less than sharing of operative expenses would also make the exclusionary clause inoperable. The majority’s reasoning rests upon a false premise that every flight is deemed commercial unless there is an equal sharing of operating expenses. It makes little sense to urge that unless there exists equal sharing of expenses all other flights are deemed to be commercial. Under Nebraska law, the terms of coverage must rely upon the ordinary meaning of the words uses. See Preferred Risk Mut. Ins. Co. v. Continental Ins. Co., 172 Neb. 179, 109 N.W.2d 126, 127-28 (1961). Webster’s Dictionary defines “commercial” as “from the point of view of profit: having profit as the primary aim.” Webster’s Third New International Dictionary 456 (1981).
In the instant case, “[t]he parties have stipulated that the money collected by Farington was not sufficient to cover the operating expenses of the flights.” Maj. Op. at 821. The policy’s equal sharing provision does not apply to this case because Farington expended more for the flights than he collected from his passengers.[15] That does not mean that Faring-ton had a commercial purpose by default. The question remains whether, in collecting less money for the flight than he expended, Farington received, or intended to receive, money or other benefits. The majority’s construction of the exclusionary terms places particular emphasis on the physical act of receiving money. In other words, the simple fact that Farington (or his wife, in this case) physically took money from passengers (that did not amount to a pro rata share of operating costs) brought this case under the commercial purpose clause of the contract. Taking this interpretation to its logical conclusion, Farington could have collected as little as one cent from each passenger and thus be precluded coverage by that act. Such an interpretation is far beyond the purpose of the exclusionary clause. A second, but equally reasonable reading of this policy, is that the commercial purpose clause only is triggered where the insured receives in *829 fact, or. intends to receive, more money or other benefits than he expends for the flights.[16] The logical conclusion of this interpretation is that because he recovered less than he expended for the flights, Far-ington clearly did not have a commercial purpose.
According to the majority’s reasoning, if the occupants did not equally share in the expenses, but did pay less than the expenses (as stipulated), then it is still a commercial purpose because payment of less than the expenses did not strictly conform to the coverage provided when equal expenses are paid. This constitutes a totally unreasonable interpretation. It means if the occupants share expenses, there is coverage because there is no charge and thus, commercial usage is not involved. But if the occupants pay less than expenses, a commercial use takes place. This makes little sense and defies every rule of reasonable construction. The majority ignores the obvious ambiguity and by implication borrows from the old maxim of construction, expressio unius est exclusio alterius. The Supreme Court, however, has long abandoned the use of such maxim in a comparable situation, saying “the maxim cannot properly be applied to a situation where the remedies redress different misconduct and where the remedial purposes of the Acts would be undermined by a presumption of exclusivity.” Herman & MacLean v. Huddleston, 459 U.S. 375, 387 n. 23, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (emphasis added).
The majority’s opinion appears to resolve this case on grounds that there is no patent ambiguity in the exclusionary clause. See Couch on Insurance 3d § 21:12 (“A patent ambiguity is one which appears on the face of the written contract of insurance.”). A closer look reveals that things are not always what they seem. “The mere fact that a particular contract is found to be unambiguous in connection with one type of loss does not preclude a court from finding that it is ambiguous in the context of a totally different type of loss.” Id. § 21:11. Thus, the mere fact that the policy is not ambiguous when applied to situations where passengers pay equal to or more than their share of operating expenses does not save it from ambiguity in this case, where the passengers paid less than their share of operating expenses. This ambiguity cannot be ignored.
Language should not be tortured to find ambiguities in a contract. See Swedberg v. Battle Creek Mut. Ins. Co., 218 Neb. 447, 356 N.W.2d 456, 458-59 (1984). It is equally important that language not be tortured to avoid ambiguity. I respectfully submit that to avoid ambiguity in this case the majority has tortured the terms of this contract by confining the language in a way that a reasonable person might not. A fair reading of this contract from the standpoint of a reasonable person purchasing insurance reveals more than one interpretation. One reading precludes coverage and the other reading mandates coverage. Given this ambiguity, under Nebraska law we must construe the policy against the insurer. See Safeco, 317 N.W.2d at 748.
There is another reason which causes me to disagree with the majority’s opinion. In affirming the district court’s order for summary judgment, the majority allegedly gives cognizance to well-accepted principles of contract interpretation espoused by the Nebraska Supreme Court. However, *830 for over a century the Nebraska Supreme Court also has recognized that “words are to be taken in their ordinary grammatical sense unless such a construction would be obviously repugnant to the framers of the instrument, or would lead to some other inconvenience or absurdity.” Curten v. Atkinson, 36 Neb. 110, 54 N.W. 131, 133 (1893) (emphasis added); see also Murphy v. Travelers Ins. Co., 141 Neb. 41, 2 N.W.2d 576, 581 (1942) (“This court is committed to the rule that, when the strict enforcement of a provision of an insurance policy will result in unreasonable and unjust forfeitures, or an absurd result, the courts will refuse to enforce the strict meaning of the language of the policy.”); Couch on Insurance 3d § 22:35 (noting the general rule that forfeitures of insurance coverage are not favored in the law and that those which “are absurd from the standpoint of the purpose of the contract to give protection are not to be enforced.”). The Supreme Court agrees. See Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 322, 48 S.Ct. 512, 72 L.Ed. 895 (1928) (“[Njarrow and unreasonable interpretations of clauses in an insurance policy are not favored.”). Thus, while terms in a contract ordinarily should be given their plain, natural and ordinary meaning, that rule does not operate if it leads to an unreasonable or absurd result or if it defeats the parties intention and purpose in entering into the contract. See Rathbun, 184 N.W. at 905 (Neb.1921).
Rules of contract construction, though useful guidelines, do not operate in a vacuum and must not trump logic and common sense in a court of law. Despite the academic framework set forth in the majority’s opinion, it not only seems absurd, but it also defies common sense to conclude that Farington received, or intended to receive, money or other benefits when the bottom line says he received nothing at all. According to the majority’s reading of the policy’s plain terms, Farington would have had to calculate each passenger’s share of operating costs to a mathematical certainty in order for coverage to exist. This would be nearly impossible and would defeat coverage in almost every instance where Farington’s passengers contributed to the operating expenses of the flight, no matter how small the amount.
Whether the policy is analyzed in terms of ambiguity or in terms of the unreasonable result it imposes, I come to the inescapable conclusion that summary judgment was inappropriate in this case. Accordingly, I would reverse and remand for further proceedings.

. See Decider v. Combined Insurance Co. of America, 244 Neb. 281, 505 N.W.2d 719, 722 (1993) ("An insurance policy should be interpreted in accordance with reasonable expectations of the insured at the time of the contract. A contract of insurance should be given a reasonable construction so as to effectuate the purpose for which it was made. In cases of doubt, it is to be liberally construed in favor of the insured.”) (quoting Neal v. St. Paul Fire & Marine Ins. Co., 197 Neb. 718, 250 N.W.2d 648 (1977)).

. In addition to the primary difference I have with the majority's opinion, I also find it internally inconsistent. For instance, the majority suggests that only cases with both a "for charge” exclusion and a "shared expense” exception to that exclusion are apposite to the case at hand. See Maj. Op. at 822 (“The cases cited by appellants do not govern this policy because those cases interpreted 'for charge’ exclusions, which did not contain any type of 'shared expense’ exception to that exclusion.”). It then goes on to rely on the conclusions set forth in cases that do not contain an explicit "shared expense” exception to a "for charge” exclusion. See Monarch Ins. Co. of Ohio v. Siegel, 625 F.Supp. 693 (N.D.Ind.1986); Cammack v. Avemco Ins. Co., 264 Or. 287, 505 P.2d 348 (1973); Flagstaff Mortuary, Inc. v. Gamble, 135 Ariz. 474, 662 P.2d 149 (1983). The majority also explains how courts have remedied ambiguity in "for charge” exclusion cases. See Maj. Op. at 823. Based on the outcomes of those cases, the majority concludes that the terms in the instant policy are not ambiguous. This is circular reasoning that lacks congruence. To adopt the interpretations in the cases that are faced with "an ambiguous ‘for charge' exclusion,” id. at 823, it seems we first would have to embrace the central premise of those cases: the terms and phrases at issue are ambiguous.

. The equal sharing provision applies where the aircraft's "occupants” equally share operating costs of the flight. An occupant is defined as "a person while in, on, or getting into or out of' the aircraft. In other words, the pilot is an occupant. Farington’s passengers equally shared expenses in that they paid $10 each for the ride, but their contributions did not cover the operating expense of the flight. This means that Farington, an occupant, assumed more than his equal share of operating costs.

. The majority’s opinion concedes the rea-sonability of this interpretation by virtue of the cases it cites that analyze similar "for charge” exclusions. See Monarch, 625 F.Supp. at 699 (holding that a "for charge” exclusion applies whenever the money received exceeds the direct operating costs of a flight); Cammack, 505 P.2d at 350 (holding that a “for charge” exclusion does not apply where money paid reimbursed expenses in a noncommercial context); Flagstaff, 662 P.2d at 151 (holding that as a matter of law, if the money paid for use of an airplane exceeds the direct operating costs of the flight, the flight was made "for a charge;” the court expressed doubt that if the money constituted a mere reimbursement of expenses that the flight would be “for a charge.”).