LYLE F. GATES, Appellant, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Respondent.

Fourth Department, March 14, 1934.

*Robert H. Jackson* [*John G. Krieger* of counsel], for the appellant.

*Timerman & Timerman* [*Alger A. Williams* and *Manly Fleischmann* of counsel], for the respondent.

EDGCOMB, J. The defendant on September 29, 1927, issued to the plaintiff a policy of insurance containing the following provision: " If the Insured shall become totally and permanently

disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime, and if such disability shall occur at any time after the payment of the first premium on this Policy, while this Policy is in full force and effect and the Insured is less than sixty years of age, and before any non-forfeiture provision shall become operative, the Company, upon receipt of due proof of such disability, will grant the following benefits:" Then followed a provision for monthly income to be paid to the insured, for which plaintiff seeks to recover.

Some two years later, while the policy was in full force and effect, and previous to the plaintiff becoming sixty years of age, and before any non-forfeiture provision became operative, the State Commissioner of Health declared the plaintiff to be a typhoid carrier, and permanently quarantined him from all connection with the production or sale of milk or any food product, and excluded him from his own farm, and required him to live elsewhere. (See Public Health Law, §§ 2-b, 2-c, 36-a.) The action is to recover benefits under the quoted provisions upon the facts just stated. The complaint has been dismissed upon the ground that it failed to state facts sufficient to constitute a cause of action.

The question involved is whether a person, who is a chronic or permanent typhoid carrier, quarantined as stated, but who is not otherwise affected, comes within the provisions of the policy above quoted. So far as we have been able to ascertain, this question has never been passed upon in any other litigation in any court.

The parties in their desire to have the question determined have gone somewhat beyond the facts stated in the complaint, and made certain concessions and statements in their respective briefs, and quoted from certain medical authorities, and have consented that we may accept such statements as true. In our decision we have acted upon this consent in determining what is a typhoid carrier.

A chronic or permanent typhoid carrier is a person who continues to harbor and discharge typhoid bacilli indefinitely after the subsidence of fever. Carriers are either fecal or urinary, or both. The former are more frequent than the latter, and apparently the more dangerous. Typhoid bacilli localize and grow in the gall bladder, bile ducts and small intestines. As many outbreaks of typhoid fever are directly traceable to carriers, the social as well as the economic importance of the problem of preventing the spread of the disease through such source is readily seen. The danger of such an outbreak from a carrier comes when he is permitted to handle

food or drink; it is then that he is apt to expose others. The disease is transmitted through the feces or the urine, and there is little or no danger in close association with a carrier, if ordinary precaution is taken, although we are told in the Journal of the American Medical Association for June 10, 1933 (Vol. 100, No. 23, p. 1866), that it "may be water borne, fly borne or transmitted through soiled linen, or direct contact." The carrier, however, does not become a menace, unless he is allowed to handle or come in contact with food or drink. He should never be employed in a dairy, or as a cook, waiter or nurse.

Various cures of the carrier state have been attempted, but none has been found which is at all certain in its results. Vaccines have been tried, but with scanty success. Surgical operations many times cure the trouble, but in numerous instances the patient still continues to harbor the typhoid bacteria in his excretions after the removal of the gall bladder. A hepatic or intestinal carrier will not be cured by cholecystectomy, because the infection is in such cases elsewhere than in the gall bladder. An operation is seldom advised after the carrier reaches the age of fifty. Plaintiff has passed that age.

For the purpose of this appeal, it must be assumed that plaintiff's condition as a typhoid carrier is permenent and incurable, and that he has not unreasonably refused a corrective or curative surgical operation.

Recognizing the menace which exists when typhoid carriers are permitted to go their own way, and engage in an occupation or trade which would expose the public to infection, the State has stepped in, and has enacted legislation authorizing drastic regulations as safeguards against the danger.

Section 2-b of the Health Law has given the Public Health Council power to adopt a Sanitary Code, dealing with matters affecting the preservation and improvement of the public health. Such a code is given the force and effect of law, and any violation thereof may be declared to be a misdemeanor. · Pursuant to the statute, a Sanitary Code has been duly adopted by which a typhoid carrier is prohibited from preparing or handling any food or drink to be consumed by persons other than members of the household with whom he resides, or from conducting or being employed in any restaurant, hotel or boarding house, or from engaging in the occupation of nurse, cook, waiter, or in any other occupation involving the handling of milk or cream, of the utensils used in the production thereof, or from residing on premises on which one or more cows are kept, except under conditions to be prescribed by the health officer.

The complaint alleges that the plaintiff has been permanently quarantined from all connection with the sale and production of milk and food, and has been excluded from his own farm, and required to reside elsewhere, and has been forbidden to enter his own property, on penalty of having his milk shut out from its only market, and that by reason thereof he is unable to pursue his vocation of farming, either upon his own farm, or as an employee elsewhere. It is further alleged that for upwards of three years appellant has made diligent efforts to obtain employment from the limited fields from which he has not been officially excluded, but has been unsuccessful because his condition " is such as to cause people to shun and fear him."

While an insurance policy has certain features which distinguish it from the ordinary commercial agreement, it is, in its general aspects, like any other contract, and is governed by the same general rules of construction. The parties may incorporate in the policy such provisions and covenants as they see fit, and their rights must be determined by the agreement itself.

Can it be said that, when this policy was written, the parties had in mind that a typhoid carrier, affected in no other manner, was physically disabled? Would the ordinary business man in making one of his customary contracts ever consider a typhoid carrier as physically disabled from work? In construing this policy we must give effect to such ordinary lay interpretation. (*Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y. 47, 51; *Silverstein* v. *Metropolitan Life Ins. Co.*, 254 id. 81, 84; *Van Vechten* v. *American Eagle Fire Ins. Co.*, 239 id. 303, 306.)

A carrier does not have typhoid fever; he is not ill; he simply harbors typhoid bacilli and excretes them; his strength is not impaired; his constitution is in no way weakened or undermined; he has the same capacity for labor which he always had; his mental powers are not affected; he suffers no pain or impairment; he would never know that he was a carrier if fecal or urine specimens were not submitted for laboratory examination and test. Had the authorities failed to discover plaintiff's condition he would still be doing his former tasks. His inability to get work is not due to any physical impairment, but to the edict of the State, or to fear of infection on the part of others. Plaintiff alleges in his complaint that he has obtained work, but that when his condition became known, he has been discharged. As he concedes in his brief, the carrier state in and of itself, if the carrier's duty to the public and the law of the State be disregarded, would not prevent him from milking cows and handling milk. Physically he is fully able to continue the manual tasks associated with the dairy business.

In *Druhl* v. *Equitable Life Assurance Society* (56 N. D. 517; 218 N. W. 220) the Supreme Court of North Dakota held that the term " physical infirmity," as used in a policy providing for double indemnity in event of death resulting solely from injuries caused by purely accidental means, not the result of disease, illness or " physical or mental infirmity," means something that materially impairs, weakens or undermines the constitution of the insured, and which tends to reduce his power of resistance, and thereby enhances the risk of death in case of injury.

In *Baker* v. *Chicago, B. & Q. R. Co.* (327 Mo. 986; 39 S. W. [2d] 535) the Supreme Court of Missouri held that the word " crippling " was synonymous with " physical disability," and defined the word as the loss of the use of a limb, or the deprivation of a person's strength, activity or capacity for service.

In *Manufacturers' Accident Indemnity Co.* v. *Dorgan* (58 Fed. 945) it was held that an anæmic murmur, indicating no structural defect of the heart, but arising simply from a temporary debility or weakened condition of the body, was not a " bodily or mental infirmity " in an application for accident insurance, in which the applicant stated that he was free from such infirmities.

In *Black* v. *Travellers' Ins. Co.* (121 Fed. 732) it is said that a bodily infirmity is something that impairs the bodily powers.

Of course, these cases are not directly in point, but they show the construction which the courts have given to the word " physical " and equivalents.

In view of the fact that plaintiff's bodily strength has not been impaired, and his ability to work has not been interfered with, it cannot, in our opinion, be said that he is physically disabled within the meaning of the policy. He is prevented from doing certain work solely by the edict of the State. A man found guilty of a crime and sent to a penal institution might be unable to find work, but such inability could not be attributed to an absence of physical power to work. Plaintiff's disability is due to the statutes of this State. Statutory or legal disability is not covered by the policy. When public good with regard to the safety of others steps in and puts a limitation upon his activities, the disability resulting is social in its nature rather than physical. Plaintiff confuses the result with the cause. The result is that he has experienced some inability to earn a livelihood, but the cause is not physical impairment of his body.

The judgment should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed, with costs.