NORMAN DECKER, APPELLANT, V. COMBINED INSURANCE
COMPANY OF AMERICA, A CORPORATION, APPELLEE.
505 N.W.2d 719
Filed October 1, 1993.   No. S-91-718.

T.J. Hallinan, of Cobb, Hallinan & Ehrlich, P.C., for appellant.

Michael K. High, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

SHANAHAN, J.
The district court for Lancaster County granted summary judgment to Combined Insurance Company of America concerning payments under Combined Insurance's disability policy issued to Norman Decker.

## FACTUAL BACKGROUND
In 1986, Norman Decker was employed at Kawasaki Manufacturing Corporation in Lincoln. As a fringe benefit of his employment, Decker was covered by a group disability insurance policy issued by Combined Insurance. In March 1986, Decker suffered a brain aneurysm which left him totally and permanently disabled. Before his disability, Decker worked

full time, and therefore, he was entitled to disability payments of $1,135.91 per month under the policy. Combined Insurance began paying Decker in June 1986 and by April 13, 1988, had paid him $22,614.53.

In April 1988, Decker received notice that he was entitled to federal Social Security disability payments of $530.30 per month retroactively commencing in September 1986. Combined Insurance's policy provided for an offset against payments under its policy if the insured was entitled to payments from the federal Social Security program, that is: "The Monthly Indemnity will be reduced by . . . . (C) Disability and retirement benefits to which you and your dependents are entitled from the Federal Social Security Program . . . ." As a result of the policy provision, Decker's monthly insurance payments of $1,135.91 should have been reduced by $530.30, the amount of the Social Security payments, which would have left Decker with monthly disability payments of $605.61 from Combined Insurance. As of April 13, 1988, and in view of the reduction on account of the Social Security payments, Decker was entitled to $14,172.10 under the policy, whereas he had actually been paid $22,614.53, or an overpayment of $8,442.43. After an allowance of $1,612.50 as a fee for Decker's lawyer in obtaining the Social Security payments, the net overpayment from Combined Insurance to Decker was $6,829.93. Decker authorized Combined Insurance to withhold $530.30 from his monthly disability payments until the net overpayment was repaid.

Under a decree dissolving the marriage between Norman Decker and Connie Decker, custody of the Deckers' minor son, Norman Decker, Jr., was granted to Connie Decker. After the divorce, Norman Decker did not claim his son as a dependent on his income tax return. On July 12, 1988, Connie Decker obtained Social Security payments of $265.10 per month, commencing in September 1986, for Norman Decker, Jr. The Social Security Act deems a child to be a dependent of his or her parent or adoptive parent without regard to where the child is living or whether the child receives parental support. 42 U.S.C. § 402(d)(3) (1988). Combined Insurance's policy does not define "dependent." However, Combined Insurance offset the

monthly Social Security payments of $265.10 for Norman Decker, Jr., against the monthly disability payments of $605.61 to Norman Decker and thereby reduced Norman Decker's payments to $340.51 per month. The reduction resulting from the offset for the child's Social Security payments produced an overpayment of $10,942.38 by Combined Insurance as of April 13, 1988. Combined Insurance unilaterally began to recoup the overpayment at the rate of $340.51 per month withheld from disability payments under Norman Decker's policy.

Norman Decker demanded that Combined Insurance cease offsetting the Social Security payments for Norman Decker, Jr., but Combined Insurance refused. Norman Decker then sued Combined Insurance for the amount of disability payments withheld on the basis of the Social Security payments to Norman Decker, Jr. After a hearing on cross-motions for summary judgment on stipulated facts, the district court determined that there was no genuine issue of material fact and that Combined Insurance was entitled, as a matter of law, to offset the Social Security payments to Norman Decker, Jr., the "dependent" son of Norman Decker, who appeals.

## ASSIGNMENTS OF ERROR

Decker asserts that the district court erred by (1) failing to find that the term "dependents" is ambiguous in Combined Insurance's policy and (2) finding that Decker's minor son was his dependent within the meaning of the disability policy.

## STANDARD OF REVIEW

"Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review." *Huffman v. Huffman*, 232 Neb. 742, 748, 441 N.W.2d 899, 904 (1989). Accord, *Albee v. Maverick Media, Inc.*, 239 Neb. 60, 474 N.W.2d 238 (1991); *Wurst v. Blue River Bank*, 235 Neb. 197, 454 N.W.2d 665 (1990); *Polenz v. Farm Bureau Ins. Co.*, 227 Neb. 703, 419 N.W.2d 677 (1988).

## THE DISABILITY POLICY

Decker contends that "dependents," an undefined term used in the disability policy, is ambiguous and argues that

"dependent" means one who is " 'financially dependent' " on another. Brief for appellant at 12. Combined Insurance counters that "dependents," as used in its policy, is defined by the federal Social Security Act. Consequently, to answer the question in Decker's appeal, we must examine the language in Combined Insurance's policy.

"Ambiguity exists in an instrument when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." *Knox v. Cook*, 233 Neb. 387, 391, 446 N.W.2d 1, 4 (1989). Accord, *Albee v. Maverick Media, Inc., supra; Frenzen v. Taylor*, 232 Neb. 41, 439 N.W.2d 473 (1989); *Denis v. Woodmen Acc. & Life Co.*, 214 Neb. 495, 334 N.W.2d 463 (1983).

Whether wording in a document is ambiguous is a question of law initially determined by a trial court. *Wurst v. Blue River Bank, supra; Knox v. Cook, supra.*

"An insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. [Citation omitted.] Where the terms of such a contract are clear, they are to be accorded their plain and ordinary meaning." *Malerbi v. Central Reserve Life*, 225 Neb. 543, 550, 407 N.W.2d 157, 162 (1987). See *Waylett v. United Servs. Auto. Assn.*, 224 Neb. 741, 401 N.W.2d 160 (1987). "While for the purpose of judicial decision dictionary definitions often are not controlling, they are at least persuasive that meanings which they do not embrace are not common." 2 George J. Couch et al., Cyclopedia of Insurance Law § 15:18 at 194 (rev. 2d ed. 1984). Regarding words in an insurance policy, " '[t]he language should be considered not in accordance with what the insurer intended the words to mean, but what a reasonable person in the position of insured would have understood them to mean. . . .' " *Safeco Ins. Co. of America v. Husker Aviation, Inc.*, 211 Neb. 21, 25, 317 N.W.2d 745, 748 (1982).

> An insurance policy should be interpreted in accordance with reasonable expectations of the insured at the time of the contract. A contract of insurance should be given a reasonable construction so as to effectuate the purpose for which it was made. In cases of doubt, it is to be liberally

construed in favor of the insured. Neal v. St. Paul Fire & Marine Ins. Co., 197 Neb. 718, 250 N. W. 2d 648.

*Modern Sounds & Systems, Inc. v. Federated Mut. Ins. Co.*, 200 Neb. 46, 49, 262 N.W.2d 183, 186 (1978). See 2 Couch et al., *supra*, § 15:16. "[T]he natural and obvious meaning of the provisions in a policy is to be adopted in preference to a fanciful, curious, or hidden meaning." *Id.* at 175.

In construing insurance contracts, it should be remembered that

" 'the parties to an insurance contract may make the contract in any legal form they desire, and in the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations, not inconsistent with public policy. If plainly expressed, insurers are entitled to have such exceptions and limitations construed and enforced as expressed.' "

*Safeco Ins. Co. of America v. Husker Aviation, Inc.*, 211 Neb. at 26, 317 N.W.2d at 748-49 (quoting *Lonsdale v. Union Ins. Co.*, 167 Neb. 56, 91 N.W.2d 245 (1958)). See *Waylett v. United Servs. Auto. Assn., supra.*

The pertinent language of the disputed clause states: "The Monthly Indemnity will be reduced by . . . . (C) Disability and retirement benefits to which *you and your dependents are entitled from the Federal Social Security Program* . . . ." (Emphasis supplied.)

Combined Insurance asserts that the meaning of "dependents" is clear and argues that "dependents," when read in context, should be given the definition employed in § 402(d)(3), the statute which defines when a child is a "dependent" for Social Security purposes. Section 402(d)(3) in pertinent part states:

A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother . . . unless . . . such individual was not living with or contributing to the support of such child *and*—

(A) such child is neither the legitimate nor adopted child of such individual, or

(B) such child has been adopted by some other individual.

(Emphasis supplied.) Regarding the conjunction "and" in the preceding statute, Combined Insurance maintains that "dependent" means that a child is a dependent without regard to where the child lives and without regard to whether a parent contributes to the child's support.

Despite Combined Insurance's argument to the contrary, the meaning of "dependents" is ambiguous inasmuch as "dependents" is susceptible of at least two plausible interpretations, namely, the federally legislated definition in the Social Security Act and Decker's suggested definition based on financial dependence or support.

When "an insurance policy contains uncertainties or ambiguities fairly susceptible of two different constructions, the construction favorable to the insured will prevail and thereby afford coverage." *Denis v. Woodmen Acc. & Life Co.*, 214 Neb. 495, 497, 334 N.W.2d 463, 465 (1983).

In *Denis*, we said: "Insurance companies in drafting their policies formulate language which may either prevent or create ambiguity. In such draftsmanship, precision provides certainty, while the absence of articulation accounts for ambiguity." 214 Neb. at 498, 334 N.W.2d at 465. We noted in *Denis* that the insured receives the benefit of an insurance contract's doubtful phrasing:

> "It is consistent with both reason and justice that any fair doubt as to the meaning of the words of a policy should be resolved against the one who prepares it, for if the terms of a policy are capable of two meanings, that is, where the true meaning is doubtful, the law favors such construction as will protect the insured, and not avoid the policy."

*Id.* (quoting *Peony Park v. Security Ins. Co.*, 137 Neb. 504, 289 N.W. 848 (1940)).

Examining Combined Insurance's policy through the eyes of a reasonable person, the objective standard to determine the meaning of language in an insurance policy, see *Safeco Ins. Co. of America v. Husker Aviation, Inc., supra*, "dependent" has a rather ordinary meaning: "one that depends or is dependent; *esp* : one relying on another for support." Webster's Third New

International Dictionary, Unabridged 604 (1981). Combined Insurance's policy does not alert a reader, especially an insured, to an out-of-the-ordinary definition of "dependent" or some esoteric meaning lurking in federal statutes governing Social Security payments. Nowhere does Combined Insurance's policy caution the insured that the definition of "dependent," located in the United States Code, differs from a "plain and ordinary" definition of "dependent" expressed in a standard dictionary. Rather, the policy merely states: "The Monthly Indemnity will be reduced by . . . . (C) Disability and retirement benefits to which *you and your dependents are entitled from the Federal Social Security Program* . . . ." (Emphasis supplied.) Thus, the policy fails to define "dependents" beyond a cryptic connection with the Social Security Act. Ascertaining the definition advanced by Combined Insurance requires that an insured locate and digest a copy of the United States Code pertaining to dependents entitled to Social Security payments. We believe that such a requirement places an unreasonable burden on an insured. Reading Combined Insurance's policy from the insured's point of view, we adopt the "natural and obvious meaning of the provisions in a policy . . . in preference to [the] hidden meaning" suggested by Combined Insurance. 2 Couch et al., *supra*, § 15:16 at 175. Therefore, for the purpose of Combined Insurance's disability policy, "dependents" means those who depend or rely on another for financial support.

Combined Insurance directs us to two decisions concerning offset provisions and the definition of "dependents" in disability policies. In both decisions, the plaintiffs asserted the offset provision was ambiguous, and in both decisions, the courts found no ambiguity. In *Sweet v. Travelers Ins. Co.*, 492 So. 2d 240 (La. App. 1986), which was decided on facts similar to the case here, the group disability policy allowed an offset of benefits paid from sources other than the insurance company which issued the policy. The pertinent provision defined "Other Income Benefits" as benefits available under the "Federal Social Security Act" and stated: " 'Other Income Benefits . . . *shall . . . be deemed to include such Benefits available to or for any and all dependents* (as therein defined) [defined in the federal Social Security Act] of the Employee on account of the

Employee's disability or retirement.' " (Emphasis in *Sweet*.) 492 So. 2d at 241. Unlike the policy at issue in Decker's case, the disability policy in *Sweet* clearly informed the insured that the definition of "dependents" had a special meaning expressed in the federal Social Security Act and, therefore, had a meaning quite different from the standard meaning of "dependents."

In *Porter v. Continental Cas. Co.*, 156 Ariz. 488, 489, 753 P.2d 178, 179 (Ariz. App. 1988), the policy in question stated: " 'Any monthly indemnity payable hereunder shall be reduced by any amount paid or payable under the disability or retirement provision of the Social Security Act (including any payments for eligible dependents) . . . .' " In *Porter*, the court reasoned that even though the word "dependents" was not defined in the policy, the phrase "eligible dependents" related to the Social Security Act. While *Porter* provides some insight into Arizona law, Nebraska law requires us to view the policy language from the perspective of a reasonable person in the position of an insured. Consequently, we find *Porter* to be unpersuasive under the circumstances.

## CONCLUSION

The word "dependents" in Combined Insurance's disability policy is ambiguous and, therefore, must be given the meaning or interpretation favorable to the insured, Norman Decker. However, the record does not contain the divorce decree and does not reveal whether Norman Decker was obligated under the decree to provide child support for his son. Also, the record does not reflect what contribution, if any, Norman Decker made to the maintenance and financial support of his son. Under the definition of "dependents," that is, those who depend or rely on another for financial support, the question remains whether Norman Decker, Jr., depends or relies on his father for financial support. Because a question of material fact exists, summary judgment was improper. For that reason, the district court's judgment is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.