**KRUGER COMMODITIES, INC., Plaintiff,**

v.

**UNITED STATES FIDELITY AND GUARANTY, Defendant.**

Civ. A. No. 95–T–942–N.

United States District Court, M.D. Alabama, Northern Division.

April 18, 1996.

---

Harry Cole, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, for plaintiff.

Armstead Lester Hayes, III, Melton, Espy, Williams & Hayes, P.C., Montgomery, AL, Christa L. Collins, Robert J. Wahl, Blasingame, Forizs & Smiljanich, P.A., St. Petersburg, FL, for National Fire Insurance Company of Hartford, Connecticut, defendant.

Richard E. Broughton, Fred B. Matthews, Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, Frank Winston, Jr., Wiley, Rein & Fielding, Washington, DC, for United States Fidelity and Guaranty Company, defendant.

### MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Plaintiff Kruger Commodities, Inc. brought this lawsuit claiming that a civil judgment against the company is covered by its commercial liability insurance policy provided by defendant United States Fidelity and Guaranty (USF & G). Kruger asserts state-law claims for breach of contract and bad faith, and seeks compensatory and punitive damages. Removal jurisdiction of this court is based on diversity of citizenship between the parties. 28 U.S.C.A. §§ 1332, 1441 (West 1966 & Supp.1993). This lawsuit is now before the court on summary judgment motions filed by each party on February 2, 1996. Kruger's motion will be denied, and USF & G's motion will be granted.

### I. STANDARD FOR SUMMARY JUDGMENT

 Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### II. BACKGROUND

From December 1991 until December 1994, Kruger operated a rendering plant in Montgomery which processed used cooking oils and animal carcasses. Henry and Peggy Davenport operated a recreational vehicle sales business on nearby property. Shortly after the plant began operating, the Davenports started complaining about offensive odors emanating from the plant. In October 1991, the Davenports filed suit alleging that the odors hurt their business sales and made them and their customers physically ill. A jury in Montgomery County Circuit Court awarded the Davenports general damages of $300,000. Kruger later negotiated a settlement of $272,000 with the Davenports. Kruger was covered by commercial liability insurance policies from National Fire Insurance Company and USF & G. Kruger called upon both companies to indemnify it for its payment to the Davenports and filed suit when they did not. National Fire reached a settlement with Kruger, leaving USF & G as the lone defendant. Two parts of the USF & G policy are relevant to this case.

Part A of the policy covers "bodily injury" liability. Under the policy, " 'bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Part A contains a "pollution exclusion" which excludes coverage for the following:

"f. (1) 'Bodily injury' ... arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants.

(a) At or from any premises, site or location which is or was at any time

owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or to others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible

. . .

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assessing the effects of pollutants.

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Part B of the USF & G policy covers "personal injury" liability. Personal injury is defined by the policy as follows:

"10. 'Personal injury' means injury, other than 'bodily injury,' arising out of one or more of the following offenses:

a. False arrest, detention, or imprisonment

b. Malicious prosecution

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord, or lessor
. . ."

Kruger claims that coverage is mandated by the bodily injury and personal injury provisions of the contract.

## III. DISCUSSION

### A. *Choice of law*

 When a federal court exercises diversity-of-citizenship jurisdiction, the court is bound to apply the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The *Erie* doctrine extends to choice-of-law questions, so that this court sitting in diversity must apply the forum state's conflict-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Tang How v. Edward J. Gerrits, Inc.,* 961 F.2d 174, 178–79 (11th Cir.1992). Therefore, this court must follow Alabama's choice-of-law rules.

 The general choice-of-law rule in Alabama is *lex loci contractus,* which provides that "a contract is governed as to its nature, obligation, and validity by the law of the place where it was made." *Ex parte Owen,* 437 So.2d 476, 481 (Ala.1983) (per curiam). *See also Cincinnati Ins. Co., Inc. v. Girod,* 570 So.2d 595, 597 (Ala.1990); *Donegal Mut. Ins. Co. v. McConnell,* 562 So.2d 201 (Ala.1990); *Gravley v. Nationwide Mut. Ins. Co.,* 553 So.2d 52, 53 (Ala.1989); *Davis v. Hartford Ins. Co. of Illinois, Inc.,* 456 So.2d 302, 304 (Ala.1984). Here, the insurance contract was formed in Nebraska. Kruger is a Nebraska corporation with its principal place of business in Nebraska. The policy was issued by Quinn Insurance, Inc. of Nebraska. Therefore, Nebraska law will be applied in interpreting the contract.[1]

### B. *Coverage under bodily injury provisions*

 Under Nebraska law, an insurance contract "is to be construed as any other contract; if its terms are clear, they are to be applied according to their plain and ordinary meaning." *Waylett v. United Services*

---

1. In any event, even if Alabama law applied, this court is convinced that the Alabama Supreme Court would reach the same conclusions.

*Auto Ass'n,* 224 Neb. 741, 401 N.W.2d 160, 163 (1987) (citations omitted). Ambiguity exists in an insurance contract "when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable meanings." *Knox v. Cook,* 233 Neb. 387, 446 N.W.2d 1, 4 (1989). An insurance policy "must be read in its entirety.... It should be read to avoid ambiguities, if possible, and the language should not be tortured to create them." *Howard v. Blue Cross/Blue Shield of Nebraska,* 242 Neb. 150, 494 N.W.2d 99, 102 (1993). "Regarding words in an insurance policy, 'the language should be considered not in accordance with what the insurer intended the words to mean, but what a reasonable person in the position of the insured would have understood them to mean.'" *Decker v. Combined Ins. Co. of America,* 244 Neb. 281, 505 N.W.2d 719, 722 (1993) (quoting *Safeco Ins. Co. of America v. Husker Aviation, Inc.,* 211 Neb. 21, 317 N.W.2d 745, 748 (1982)). "In cases of doubt, [the insurance policy] is to be liberally construed in favor of the insured." *Id.*

Because there is no Nebraska case addressing the application of a pollution exclusion, the court must look to other jurisdictions for persuasive authority. Kruger's policy contains what is called an "absolute pollution exclusion", that is, it does not contain exceptions for sudden or accidental releases of pollutants. *See, e.g., Union Mutual Fire Ins. Co. v. Hatch,* 835 F.Supp. 59, 64 (D.N.H.1993); *see also Vantage Development Corp., Inc. v. American Env. Tech.,* 251 N.J.Super. 516, 598 A.2d 948, 952–53 (Law Div.1991) (explaining the difference between absolute and qualified pollution exclusions). In reviewing the extensive litigation on absolute pollution exclusions, one federal court stated that "Courts faced with the absolute exclusion generally have concluded that it is unambiguous and excludes coverage for all claims alleging damage caused by pollutants." *City of Salina, Kansas v. Ma-*

*ryland Casualty Co.,* 856 F.Supp. 1467, 1476 (D.Kan.1994).

USF & G cites numerous cases holding that an absolute exclusion precludes recovery for damage caused by airborne substances emitted during the normal operation of an industrial business. In *Hydro Systems, Inc. v. Continental Ins. Co.,* 929 F.2d 472, 474–476 (1991), the Ninth Circuit Court of Appeals held that the pollution exclusion barred coverage for cleanup costs resulting from the release of styrene gas from the policyholder's fiberglass plant. Similarly, in *Park–Ohio Industries, Inc. v. Home Indemnity Co.,* 975 F.2d 1215, 1222 (1992), the Sixth Circuit Court of Appeals held that a pollution exclusion barred coverage for the discharge of smoke, fumes, and particulates caused by the use of allegedly defective induction furnaces manufactured by the policyholder. In addition, in *American States Ins. Co. v. F.H.S., Inc.,* 843 F.Supp. 187, 189 (S.D.Miss.1994), a district court held that the exclusion barred coverage for respiratory irritation claims resulting from ammonia releases by a policyholder.[2]

Kruger cites two Alabama cases as holding that pollution exclusions are ambiguous and therefore should be construed in favor of the insured: *Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Ins. Co.,* 347 So.2d 95 (Ala.1977) and *United States Fidelity & Guar. Co. v. Armstrong,* 479 So.2d 1164 (Ala. 1985). These cases are not binding precedent because Nebraska rather than Alabama law applies to contract interpretation in this case. In any event, they are factually distinguishable from this case. *Molton* involved a suit brought against the developer of a new subdivision because rain caused sand from the construction site to wash onto the property of an adjacent landowner. 347 So.2d at 96–97. *Armstrong* involved a suit against a construction company when the sewage system it was building backed up and caused raw sewage to overflow onto the property of

**2.** For other cases with similar holdings, *see Crabtree v. Hayes Dockside, Inc.,* 612 So.2d 249, 252 (La.Ct.App.1992) (exclusion bars coverage of claims of skin and eye irritation from polyvinyl chloride dust), *writ denied,* 614 So.2d 1257 (La. 1993); *O'Brien Energy Systems, Inc. v. American Employers' Ins. Co.,* 427 Pa.Super. 456, 629 A.2d 957, 962 (1993) (exclusion bars coverage for claims arising out of migrating methane gas), *appeal denied* 537 Pa. 633, 642 A.2d 487 (1994); *Demakos v. Travelers Ins. Co.,* 205 A.D.2d 731, 613 N.Y.S.2d 709 (1994) (exclusion bars coverage for claims arising to out of exposure to cigarette smoke).

an adjacent landowner. 479 So.2d at 1166–67. The Alabama Supreme Court held in both cases that coverage existed because pollution exclusions are only intended to apply to "industrial activities." *Id.* at 1168; 347 So.2d at 99. The court held that there was at least some ambiguity as to whether the activities of the construction companies in those cases were industrial. In this case, there is little question that Kruger's rendering plant engaged in industrial activities. In addition, the Alabama cases are distinguishable in that they involved a different type of pollution exclusion from this case. The Alabama cases involved exclusions with exceptions for the sudden or accidental release of pollutants. The backup of a sewage line or the washing of sand off a construction site could be seen as sudden and accidental. In contrast, this case involved an absolute pollution exclusion, which the overwhelming majority of courts have found to bar coverage for all types of pollution claims. Therefore, the cases cited by Kruger do not support the conclusion that the pollution exclusion in this case is ambiguous.

Kruger also argues that many of the cases cited by USF & G are legally distinguishable because they involved hazardous chemicals. Kruger argues that

> "the purpose behind the [pollution] exclusion is evident. The potential adverse effects of allowing insurance coverage for the unlawful emission of hazardous chemicals are recognized.... In *Davenport v. Kruger Commodities*, an environmental engineer from the Alabama Department of Environmental Management testified that he did not find Kruger [in] violation of any applicable environmental standard."[3]

Therefore, Kruger argues that allowing coverage in this case would not thwart the purpose of the pollution exclusion.

■■■■ This argument is flawed on three grounds. First, there is no legal requirement that chemicals must be hazardous for the pollution exclusion to apply. For example, in *Crabtree*, the court held that, even though polyvinyl chloride is not classified as toxic or hazardous, coverage was still precluded because polyvinyl chloride acted as an irritant which caused skin and eye problems. 612 So.2d at 252. Second, there is no requirement that Kruger be found in violation of an environmental law for the pollution exclusion to apply. Kruger offers no legal precedent for such a proposition, and there are a number of cases where the exclusion applied without any evidence of a prior environmental law violation. *See, e.g., Crabtree,* 612 So.2d at 251–253; *Demakos,* 613 N.Y.S.2d at 710. Third, the legal or policy purpose of the exclusion is irrelevant in determining whether it applies. The correct test under Nebraska law for interpreting an insurance contract is "'what a reasonable person in the position of the insured would have understood [the language] to mean.'" *Decker,* 505 N.W.2d at 722 (quoting *Safeco Ins. Co. of America v. Husker Aviation, Inc.,* 211 Neb. 21, 317 N.W.2d 745, 748 (1982)).

■■■■ The plain meaning of the policy indicates that a reasonable person in the position of Kruger would have understood the pollution exclusion to include odors produced by processing animal carcasses at the plant. The exclusion precludes coverage for claims arising out of the "discharge, dispersal, seepage, migration, release or escape of pollutants ... which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste." The exclusion defines waste as "materials to be recycled, reconditioned or reclaimed." Mr. Kruger's trial testimony indicates that the rendering plant recycled and reconditioned a form of waste. Kruger stated that the plant "process[es] the inedible parts of animals that are slaughtered in slaughter houses; ... when an animal is slaughtered there is only about 62 percent of it that's edible, the rest of it is a disposable problem without rendering plants, which would be a real health problem if it weren't for rendering plants." Kruger explained that the plant turned the carcasses into "an animal protein called 50 percent meat and bone meal, which

---

3. Plaintiff's response, filed February 23, 1996, in opposition to USF & G's motion for summary judgment, at 5.

is an ingredient fed back to the chickens and livestock in the area, as well as dry dog food." Mr. Kruger's testimony indicates that he was aware that animal carcasses posed a pollution threat. He stated that if the carcasses were not processed they "would deteriorate and create a health problem.... I don't believe you can go to a land fill dump with it, because of the underground water threat." The court concludes that at the time it purchased the policy, Kruger understood that it processed waste which could produce pollution. Therefore, the pollution exclusion applies in this case, and USF & G is not liable to Kruger for coverage under the bodily injury provisions of its commercial liability insurance policy.

### C. Coverage under personal injury provisions

■ Kruger contends that, even if coverage is not mandated by the bodily injury provisions of the contract, it is mandated by the personal injury provisions, which provide coverage for, among other things, "injury, other than 'bodily injury,' arising out of ... the *wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy* of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord, or lessor." (Emphasis added.)

The only Nebraska case on point held that a personal injury provision did not provide coverage for liability incurred from a lawsuit based upon nuisance and trespass theories. In *Columbia National Insurance v. Pacesetter Homes Inc.*, 532 N.W.2d 1, 9 (1995), the developer of a housing subdivision was sued by nearby property owners because the construction caused "noise, dust, ground vibration, diminution in the value of their property, loss of trees, and increased traffic volume." The developer's comprehensive general liability insurer brought a declaratory judgment action to determine whether it had a duty to defend the developer. The developer's insurance policy defined personal injury, among other things, as " 'wrongful entry or eviction or other in-

vasion of the right of private occupancy.' " *Id.* at 5 (quoting the policy). The developer contended that this clause insured it against liability from the nuisance and trespass suits brought by the nearby property owners. *Id.* at 9.

The Supreme Court of Nebraska held that the personal injury provisions did not create a duty to defend the developer.[4] The court stated that "the right of private occupancy can only refer to those rights associated with an individual's act of inhabiting the premises, not to rights associated with the individual's right to use and enjoy the inhabited premises." *Id.* at 10 (quoting *Decorative Ctr. of Houston v. Employers Casualty, Co.*, 833 S.W.2d 257, 261 (Tex.Ct.App.1992)). The court further stated that, "in other words, the right of private occupancy is the legal right to occupy premises, not the right to enjoy occupying those premises." *Id.* In addition, the court noted that none of the plaintiffs had "pled wrongful or constructive eviction from their property." *Id.*

The personal injury provisions in this case are virtually identical to those interpreted in *Pacesetter Homes.* Furthermore, both cases are based on nuisance causes of action and similar fact situations. In *Pacesetter Homes,* the adjacent property owners alleged disruption in the enjoyment of their homes and diminution in home value because of dust and noise. In this case, the Davenports alleged physical illness and diminution in the value of their business because of foul odors. The Davenports' complaint did not allege they had been denied occupancy of their property.

Because the court is applying Nebraska law in its interpretation of the personal injury provisions, *Pacesetter Homes,* is binding precedent. Kruger cites numerous cases from other jurisdictions holding that the phrase "other invasion of privacy" is ambiguous as a matter of law. In contrast, USF & G cites numerous cases from other jurisdictions holding that allowing coverage under the personal injury provisions of an in-

---

4. Although *Pacesetter Homes* involved a duty to defend rather than a duty to indemnify, "an insurer's duty to defend is broader than its duty to indemnify" under Nebraska law. *John Markel*

*Ford, Inc. v. Auto–Owners Insurance Company,* 249 Neb. 286, 543 N.W.2d 173, 179 (1996). Therefore, because the court found no duty to defend, there would be no duty to indemnify.

surance contract would negate the purpose of the pollution exclusion. However, none of those cases is relevant given that the Nebraska Supreme Court has interpreted a virtually identical personal injury provision under facts very similar to this case. Therefore, the court concludes that because the Davenports were not denied occupancy of their property, Kruger is not entitled to indemnification from USF & G under the personal injury provisions of its commercial liability insurance contract.[5]

### D. *Bad faith*

Kruger claims that USF & G acted in bad faith by denying its claim for indemnification for payments made to the Davenports. The parties dispute whether Alabama or Nebraska law applies to Kruger's claim of bad faith. The court need not reach this issue, because regardless of which state's law is applied, Kruger's bad faith claim would not succeed. Under Alabama law, the plaintiff has the burden of proving the absence of any " 'reasonably legitimate or arguable reason' " for the insurer to deny paying the insured's claim. *Fuller v. State Farm Fire and Casualty Co.*, 721 F.Supp. 1219, 1226 (M.D.Ala.1989) (quoting *McLaughlin v. Alabama Farm Bureau Mut. Casualty Ins. Co.*, 437 So.2d 86, 90 (Ala. 1983)). Under Nebraska law, a plaintiff is required to show only the lack of a "reasonable basis for denying benefits." *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769, 777 (1991). Because this court has ruled that USF & G has no legal obligation to pay Kruger's claim, USF & G obviously had a reasonable basis for denying the claim. Therefore, USF & G has not acted in bad faith.

An appropriate judgment will be entered granting USF & G's motion for summary judgment and denying Kruger's motion for summary judgment.

### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, AND DECREE of the court:

(1) That the motion for summary judgment filed by plaintiff Kruger Commodities, Inc. on February 2, 1996, is denied;

(2) That the motion for summary judgment filed by defendant United States Fidelity and Guaranty on February 2, 1996, is granted; and

(3) That judgment is entered in favor of defendant United States Fidelity and Guaranty and against plaintiff Kruger Commodities, Inc., with plaintiff Kruger Commodities, Inc. taking nothing by its complaint.

It is further ORDERED that costs are taxed against plaintiff Kruger Commodities, Inc., for which execution may issue.

---

**5.** By ruling on these grounds, the court does not reach the issue, strongly disputed by the parties, of whether the language in the contract, "by or on behalf of the owner, landlord, or lessor, of the premises," modifies the party occupying the property or the party making the wrongful invasion.