Hai DANG, Plaintiff,

v.

**NORTHWESTERN MUTUAL LIFE IN-SURANCE COMPANY, a Wisconsin corporation, Defendant.**

No. 8:CV95–00352.

United States District Court,
D. Nebraska.

Feb. 6, 1997.

Charles B. Jaksich, Omaha, NE, for Plaintiff.

Steven D. Davidson, Baird, Holm Law Firm, Omaha, NE, for Defendant.

STROM, Senior District Judge.

## MEMORANDUM OPINION

This matter is before the Court on Northwestern Mutual Life Insurance Company's motion for summary judgment (Filing No. 26). Northwestern Mutual contends that summary judgment is proper because the plaintiff, Dr. Hai Dang, does not have a covered disability as defined in his occupational disability insurance policy. For the reasons set forth herein, the motion will be granted.

## FACTS

The plaintiff stipulates to the detailed statement of facts set forth in the defendant's brief. Plaintiff's Brief at 1 and 2. Briefly, in March of 1993, when he was a first-year surgery resident at Creighton University and St. Joseph Hospital, Dang purchased occupational disability insurance from Northwestern Mutual Life listing his primary occupation as "general surgeon." The policy provides benefits if Dang becomes partially or totally disabled. Dang is totally disabled within the meaning of the policy if

he is unable to perform the principal duties of his occupation as a result of accident or sickness. Dang is partially disabled within the meaning of the policy if, as a result of accident or sickness, he is unable to perform one or more of the principal duties of his occupation or to spend as much time at his occupation as he did before the disability started, and he has at least a twenty percent loss of earned income.

In May of 1993, during a routine screening, Dang tested positive for the hepatitis B "b" surface antigen. Hepatitis B is an infectious virus transmitted primarily through direct contact with blood or sexual contact. Dang is physically unaffected by the virus, but he is considered a chronic carrier of the hepatitis B virus.

After learning of the test result, Creighton and St. Joseph Hospital formed a committee to develop recommendations to govern the remainder of Dang's residency. The committee recommended among other things that Dang get informed consent from his patients before he performed any "exposure-prone" procedure. An "exposure-prone" procedure was defined as follows:

> Digital palpation of a needle tip in a body cavity or the simultaneous presence of the [health care worker's] fingers and a needle or other sharp instrument or object in a poorly visualized or highly confined anatomic site.

Defendant's Brief at 5.

For the next year, Dang continued his surgery residency. He cared for preoperative and postoperative patients and performed educational and training activities, but he refrained from all exposure-prone procedures and never sought informed consent from any patient to perform such a procedure. In July of 1994, Dang transferred to Creighton's radiology residency program.

Dang filed a claim seeking disability benefits under the policy. Northwestern Mutual denied the claim. On June 15, 1995, Dang filed suit in Nebraska state court alleging that Northwestern Mutual had improperly denied the claim. Northwestern Mutual re-moved the case to this Court and now seeks summary judgment.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A material issue is genuine if it has any real basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, the Court must view all evidence and inferences in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. However, the nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. And if the plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

## DISCUSSION

The issue in this case is whether Dang is disabled, either partially or totally, as a result of accident or sickness within the mean-

ing of his occupational disability policy. The Court concludes as a matter of law that Dang is not disabled within the meaning of the policy.

 Under Nebraska law, insurance policies are to be construed as any other contract to give effect to the parties intentions when they entered into the contract. *Katskee v. Blue Cross/Blue Shield,* 245 Neb. 808, 813, 515 N.W.2d 645, 649 (1994).

> Where the terms the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the policy.

*Id.* "[W]hile for the purpose of judicial decision dictionary definitions often are not controlling, they are at least persuasive that meanings which they do not embrace are not common." *Decker v. Combined Ins. Co. of Am.,* 244 Neb. 281, 284, 505 N.W.2d 719, 722, (1993). An insurance contract should be reasonably construed so as to effectuate the purpose for which it was made. *Id.*

 In this case, the Court must determine if Dang is disabled within the meaning of the contract. The plain and ordinary meaning of disabled is "crippled; injured; incapacitated." Random House Dictionary of the English Language 560 (2d. ed.1987). Disability is defined as "lack of adequate power, strength, or physical or mental ability; incapacity. A physical or mental handicap, esp. one that prevents a person from living a full, normal life or from holding a gainful job." *Id.* In sum, the term disabled or disability contemplates the loss of physical or mental ability.

 The Court finds the case of *Gates v. Prudential Ins. Co.,* 240 A.D. 444, 270 N.Y.S. 282 (1934), cited by Northwestern Mutual, to be markedly similar to the case at hand. The plaintiff in *Gates* was a dairy farmer. He purchased disability insurance which provided that he would receive benefits "[i]f the Insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime...." *Id.* 270 N.Y.S. at 282–83. After purchasing the policy, the plaintiff was declared a typhoid carrier. Pursuant to the state's public health law, he was permanently quarantined from all connection with the production or sale of milk and food and was excluded from his own farm.

When determining whether the plaintiff was entitled to disability benefits under the policy, the court asked:

> Can it be said that, when this policy was written, the parties had in mind that a typhoid carrier, affected in no other manner, was physically disabled? Would the ordinary business man in making one of his customary contracts ever consider a typhoid carrier as physically disabled from work? In construing this policy we must give effect to such ordinary lay interpretation.

*Id.* at 285. The court continued:

> A carrier does not have typhoid fever; he is not ill; he simply harbors typhoid bacilli and excretes them; his strength is not impaired; his constitution is in no way weakened or undermined; he has the same capacity for labor which he always had; his mental powers are not affected; he suffers no pain or impairment; he would never know that he was a carrier if fecal or urine specimens were not submitted for laboratory examination and test. Had the authorities failed to discover plaintiff's condition, he would still be doing his former tasks. His inability to get work done is not due to any physical impairment, but to the edict of the state, or to fear of infection on the part of others. Plaintiff alleges in his complaint that he has obtained work, but that when his condition became known, he has been discharged. As he concedes in his brief, the carrier state in and of itself, if the carrier's duty to the public and the law of the state be disregarded, would not prevent him from milking cows and handling milk. Physically he is fully able

to continue the manual tasks associated with the dairy business.

*Id.* at 285–86. The court determined that the plaintiff's disability was due to state statute, and the policy did not cover a statutory or legal disability. "When public good with regard to the safety of others steps in and puts a limitation upon his activities, the disability resulting is social in its nature rather that physical." *Id.* at 286–87. The court concluded that in view of the fact that his strength had not been impaired or his ability to work interfered with, the plaintiff was not disabled within the meaning of the policy.

The Court finds that the reasoning in *Gates* is sound and will apply it in this case. Although Dang is a hepatitis B virus carrier, he remains physically able to perform all of his duties as a surgeon, including exposure-prone procedures. In fact, had his carrier status not been discovered, he would likely still be performing all of the duties of a surgeon. However, the public good with regard to preventing the transmission of the hepatitis B virus has stepped in and placed an informed consent limitation on Dang's activities. This limitation is not physical or mental in nature. Rather, it is a social disability, and one the policy does not insure against. In this case, Dang has not lost the strength or physical ability to perform as a surgeon as a result of carrying the hepatitis B virus, and thus, he is not disabled within the meaning of the policy.

 In addition to the foregoing reason, Dang's claim should be dismissed because it is not a factual disability. "It is a general rule that disability insurance policies ... provide coverage for *factual disabilities* (i.e., disabilities due to sickness or injury) and not for legal disabilities." *Goomar v. Centennial Life Ins. Co.,* 855 F.Supp. 319, 325 (S.D.Cal. 1994) aff'd. 76 F.3d 1059 (9th Cir.1996). In *Goomar,* the court determined that a doctor who was able to perform all of the duties of his occupation until his license was revoked for sexual misconduct allegedly caused by a psychological disability was not totally disabled within the meaning of his disability policy. The court found that the doctor's inability to practice his regular occupation was due to his license revocation rather than

sickness or injury. Thus, the doctor was seeking benefits for a non-covered legal disability rather than a covered factual disability. *Id.* at 325–26.

Analogously, Dang is seeking benefits for a legal or administrative disability rather than a factual disability. Dang's inability to perform surgery as usual is due to Creighton and St. Joseph Hospital's requirement that he not perform exposure-prone procedures without informed consent. It is not due to a sickness. Dang's disability policy does not cover administrative or legal disabilities.

For the reasons set forth herein, Northwestern Mutual's motion for summary judgment will be granted. A separate order will be entered herein in accordance with this memorandum opinion.